**IV.**

Based upon the foregoing, the judgment of the district court is AFFIRMED.

---

violation merely because it was the employee's first violation of the dock policy.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0070P (6th Cir.)
File Name: 02a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANTHONY CLAYTON,
    *Plaintiff-Appellant,*

    *v.*                                        No. 00-1970

MEIJER, INCORPORATED,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-74029—John Feikens, District Judge.

Submitted: November 2, 2001

Decided and Filed: February 26, 2002

Before: MARTIN, Chief Circuit Judge; BATCHELDER, Circuit Judge; SARGUS, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** John R. Runyan, SACHS WALDMAN, Detroit, Michigan, for Appellant. Thomas M. Miller, SENIOR LABOR COUNSEL, MEIJER LEGAL DEPARTMENT, Grand Rapids, Michigan, for Appellee.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

SARGUS, District Judge.  Anthony Clayton, plaintiff-appellant, appeals the decision of the district court granting summary judgment to the defendant-appellee, Meijer, Incorporated ("Meijer") on his Title VII claim of racial discrimination.  For the reasons that follow, the decision of the district court is affirmed.

### I.

In 1994, Meijer hired Clayton, an African-American, as a truck driver.  As a result of an accident which occurred on May 30, 1998, Meijer discharged Clayton.  Thereafter, Clayton filed an action in the district court alleging that Meijer violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

On August 8, 2000, the district court granted Meijer's motion for summary judgment. The court found that Clayton failed to establish a prima facie case of racial discrimination.  The judge applied the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) analysis.  The district court determined that the plaintiff had established that he had met the first three prongs of the burden shifting framework by establishing that he was a member of the protected class, that he suffered an adverse employment action and that for purposes of the motion he was qualified for the position from which he was terminated. *Id*. at 802.  The district court found that Clayton did not satisfy the fourth prong of the *McDonnell Douglas* analysis in that he did not establish that he was either replaced by a person from outside the protected class or was treated differently from similarly situated employees outside the protected class. *Id*.  Clayton appealed the district court's grant of summary judgment.

In this case, the employer discharged an African-American employee who had engaged in a serious act of misconduct which resulted in injury to a coworker who was rendered totally disabled.  While other white employees may have engaged in the same acts of negligence, the employer is not precluded from considering the harm resulting from the conduct of its employees.  In this case, only Clayton's negligence caused serious injury to a coworker.  This is precisely "such differentiating or mitigating circumstance" that distinguishes Clayton's conduct from those of the three white coworkers. *Mitchell,* 964 F.2d at 583.[4]  The fact that an employer discharged an African-American employee who seriously injured a coworker, but did not discharge white employees who engaged in the same conduct without injury to fellow employees, does not give rise to an inference of discrimination.  In this case, the injuries to the coworker were serious and disabling.  While the analysis required by *Mitchell* and *Ercegovich* is often fact dependent and not amenable to summary disposition, that analysis does not preclude summary judgment here.  The undisputed facts in this case demonstrate that Clayton's infraction was qualitatively more serious than those of his three coworkers.  The employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination.[5]

---

[4] Examples abound in the law involving differential treatment of what would otherwise be identical acts that result in differing levels of harm to third parties.  For example, a failure to use a blinker when changing lanes is in virtually every jurisdiction a minor misdemeanor.  The same conduct, however, may result in a deadly collision.  In this circumstance, most jurisdictions would treat the circumstances as involving vehicular homicide, an offense for which much greater penalties are available. Yet, in both circumstances, the conduct of the offending party was the same.

[5] Clayton also contends that he should not have been fired for a single violation of Meijer's policy requiring drivers to make certain the dock plate is pulled and the trailer doors locked.  While this particular policy provides for discharge after only a second violation, another policy provides for discharge under the company's safety policy.  It is clear that the former policy does not preclude discharge for a serious safety

*McDonnell Douglas,* 411 U.S. at 804 (in which the plaintiff, an African-American, engaged in an unlawful traffic obstruction at the employer's location, but was treated more severely than white employees engaging in the same conduct). As further explained in *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1976), "the ultimate . . . question as we indicated in *McDonald Douglas*, [is whether] an allegation that 'other employees involved in acts against (the employer) of *comparable seriousness* . . . were nevertheless retained . . . .'" *Id*. at 283 n.11 (emphasis in original).

As this Court held in *Mitchell*, the employees to whom the plaintiff seeks to compare himself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers treatment of them for it." 964 F.3d at 583. As further explained in *Ercegovich*, the plaintiff is required to "demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." 154 F.3d at 353 (emphasis in original).

It is Clayton's burden to establish the elements of a prima facie case. As we noted in *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir. 1999):

> In *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089, the Supreme Court observed that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" and that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." The prima facie case merely serves to raise a rebuttable presumption of discrimination by "eliminating the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff]," *id.* at 254, 101 S. Ct. 1089, and not to satisfy the plaintiff's ultimate burden of persuasion.

*Id*. at 659.

## II.

On May 30, 1998, Clayton drove a semi-truck to Meijer's store in Bryden, Michigan, and dropped off a partially full trailer. While en route, he was advised by the store manager he was to pick up an empty trailer ready to be taken back to the Meijer Distribution Center from which Clayton had departed.

After dropping off the first trailer, Clayton backed up his truck to an empty trailer and hitched it to his rig. Insulation padding surrounded the dock door where the trailer was parked. Consequently, from his truck, Clayton could not see into the loading dock and could not see the rear trailer door. It is undisputed that Clayton was aware of the circumstances and knew that he was to make sure the rear trailer door was closed and the dock plate was raised[1] before moving the trailer.

Clayton acknowledged in his deposition that it was his responsibility to check that the rear door of the trailer was closed and that the dock plate had been raised before he could safely drive away. Clayton also admits that before he drove the rig away from the dock, he did not go to the rear of the truck and determine for himself that the door was closed and the dock plate raised. He also did not use a telephone on the outside of the dock doors to determine the status of the trailer door and dock plate.

As Clayton drove the truck and trailer away from the dock, a serious accident ensued. The door of the trailer was not closed. Further, the dock plate was still in place. A 66 year-old female coworker was actually standing on the dock plate as the vehicle pulled away from the dock. As a result, the dock plate fell and the coworker fell four feet to the ground.

---

[1]A metal dock plate forms a bridge from the receiving dock to the rear of the trailer and is used to load materials from the inside building onto the trailer.

In the course of the fall, she broke her right knee and has been unable to return to work as a result of her injuries.

Following Clayton's discharge, his former supervisor hired an additional ten truck drivers to perform the same kind of work previously done by Clayton. While the record below is not precise, at least three and perhaps five of the new hires were African-American. No single new hire filled the position formerly performed by Clayton.

Clayton also submitted evidence in support of his claim that other white employees who engaged in essentially the same conduct for which he was fired were not themselves discharged. All three of the employees identified by Clayton were truck drivers for Meijer and were involved in incidents which were similar with respect to the conduct of the employee but dissimilar with respect to the resultant injuries to coworkers.

In the case of David Albain, the employee pulled a trailer away from a warehouse dock without verifying that the rear door was closed and the dock plate was raised. A coworker was actually in the trailer operating a type of forklift. Albain drove the trailer to a staging area where it was parked without injury to the coworker who remained, without Albain's knowledge, in the trailer. Albain was given a three day disciplinary suspension as a result of the safety violation.

Clayton also produced testimony that Michael Pruitt, a Meijer truck driver working out of the distribution center in Lansing, Michigan, also pulled a trailer from a dock without checking the rear door and dock plate. The conveyor extending from the trailer to the dock fell to the ground as the trailer pulled away. As in the case of Albain, Pruitt also received a three day disciplinary suspension.

Finally, Clayton points to the case of Scott Fraley, also employed by Meijer as a truck driver. The incident involving Fraley occurred in October, 1999, over one year after Clayton was discharged. Fraley also pulled his vehicle away with the dock plate still in place and the trailer doors open. A

original). As further explained in *Ercegovich*, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" 154 F.3d at 352 (emphasis in original) (citation omitted). Finally, in *Perry*, we explained that "this Court has asserted that in applying the standard [that plaintiff must show that he is treated differently than similarly situated employees from outside the class] courts should not demand exact correlation, but should instead seek relevant similarity." 209 F.3d at 601. Applying the principles set forth in *Mitchell*, *Ercegovich*, and *Perry*, the white coworkers to whom Clayton seeks to compare himself were involved in conduct superficially similar to that engaged in by the plaintiff. All three white co-workers were truck drivers for the defendant. All three admittedly pulled a rig away from a loading dock without insuring that the back doors were closed and that the dock plate had been removed.[3]

The fact remains, however, that the three employees who were also involved in similar conduct as Clayton's discharge did not injure a coworker. All four drivers, including the plaintiff, were guilty of at least negligent conduct in the manner in which they drove their rigs away from the dock. Only Clayton, however, seriously injured a coworker, rendering her totally disabled from further employment.

It is well established that Clayton may obtain relief under Title VII, even if he engaged in serious misconduct, provided that white employees who engage in the same conduct were either not disciplined or not disciplined as severely.

---

[3] Albain's circumstances were the most similar to the plaintiffs. The incident involving Albain occurred within six months of Clayton's infraction and at the same location. Further, Albain was supervised by the same individual as was the plaintiff. With regard to Pruitt and Fraley, the locations of the incidents were not identical, although the conduct was remarkably similar, other than the fact that no coworker was injured.

treated more favorably than the plaintiff." *Id.* at 1247 (emphasis in original).

Other Title VII cases decided by this Court have reached the same conclusion. *See, e.g.*, *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001); *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000); *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 489 (6th Cir. 2000); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). Further, this Court has applied the same analysis in utilizing the *McDonnell Douglas* framework with regard to the elements of the plaintiff's burden in establishing a prima facie case of discrimination with regard to other antidiscrimination statutes. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 659 (6th Cir. 1999) (applying the *McDonnell Douglas* test in a case under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998) (applying the *McDonnell Douglas* test to the Age Discrimination and Employment Act, 29 U.S.C. § 623).

In light of the previous decisions from this Court, this panel concludes that the district court correctly held that the plaintiff must prove that he was either replaced by a person outside of the protected class or show that similarly situated, non-protected employees were treated more favorably.

The more difficult issue presented by Clayton is whether he was treated differently than non-minority employees engaging in the same or similar conduct. The plaintiff concedes that he cannot establish that he was replaced by a person outside of the protected classification. Therefore, in order to establish a prima facie case of discrimination, he must show that he was treated differently than similarly situated employees from outside the class.

As this Court first explained in *Mitchell*, "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects*." 964 F.3d at 583 (emphasis in

conveyor system was still on the trailer and one employee was actually standing on the dock plate. The employee had to jump away from the dock to escape injury. The conveyor system and product were damaged as they crashed to the ground. Fraley was discharged based upon his conduct. Although Fraley's conduct did not result in injury to a co-worker, Fraley had been involved in four accidents, which Meijer deemed preventable, in the two years prior to his discharge.

The circumstances involving Albain, Pruitt, and Fraley share a number of similarities, including the fact that all three were truck drivers for Meijer and committed the same conduct for which Clayton was discharged. Of the three, only Fraley was discharged. His prior work record included a number of preventable accidents which was not the case with Clayton. The district court found that the primary difference between the circumstances involving the basis for Clayton's discharge and the treatment afforded Albain, Pruitt, and Fraley was the fact that Clayton caused serious physical harm to a coworker, while the conduct of the other three did not.

The district court concluded that Clayton failed to establish a prima facie case under *McDonnell Douglas*. The court found that Clayton had not established that he was replaced by a person outside of the class or that he had been treated differently from similarly situated non-minority employees.

### III.

This Court reviews the district court's grant of summary judgment *de novo*. *See Gribcheck v. Runyon*, 245 F.3d 547, 549 (6th Cir. 2001). The standards applicable to such review are well established:

Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motions." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At that point, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

*Dixon v. Anderson*, 928 F.2d 212, 216 n.5 (6th Cir. 1991) (parallel citations omitted).

In challenging the granting of summary judgment, Clayton first asserts that the district court incorrectly applied the *McDonnell Douglas* test. Specifically, Clayton asserts that the district court erred in requiring him to produce evidence to support a finding that plaintiff was replaced by someone outside the protected class.

To the contrary, the district court quite specifically stated that once the plaintiff established that he was a member of a protected class, that he suffered from an adverse employment action, and that he was qualified for the position from which he was terminated, that the prima facie case under *McDonnell Douglas* is established if the plaintiff then establishes one or both of two alternative theories. According to the district court, the plaintiff could either establish that he was replaced by someone outside the protected class or that he was treated differently from similarly situated non-minority employees. (Opinion and Order, p. 3).

Clayton urges this Court to adopt the standard articulated by the First Circuit in *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999). The Court held that a

plaintiff can establish the last prong of a prima facie case by simply showing "that his position remained open for (or was filled by) a person whose qualifications were similar to his." *Id.* at 19. The Court held that evidence regarding disparate treatment of others outside the protected classification should only be considered in the third and final stage of the analysis, meaning after the defendant has responded with a non-discriminatory explanation for the adverse employment action.[2]

Clayton acknowledges that this Court has not adopted the formulation set forth by the First Circuit in *Conward*. Instead, this Court has held that in order to establish a prima facie case of discrimination by the defendant, "the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class. . . . [t]he fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted).

This Court in *Talley* further held, "showing that similarly situated non-protected employees were treated more favorably than plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the prima facie case – a plaintiff may satisfy the fourth element by showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were

---

[2] In so holding, the Court of Appeals nonetheless found that while the plaintiff was entitled to the invocation of the presumption, the employer had responded with a legitimate business justification for the discharge. The Court also found that the plaintiff had failed to establish that other employees not in the protected classification had been treated differently. The First Circuit also explained, as has this Court described, the plaintiff bears the burden of establishing that "others similarly situated to him in all relevant aspects were treated differently by the employer." *Conward,* 171 F.3d at 20.