**Lucille M. MOHR, Plaintiff–Appellant,**

v.

**The HOOVER COMPANY, et al Defendants–Appellee.**

No. 02–4107.

United States Court of Appeals, Sixth Circuit.

May 14, 2004.

Brian J. Williams, Akron, OH, for Plaintiff–Appellant.

Gust Callas, Black, McCuskey, Souers & Arbaugh, Canton, OH, for Defendants–Appellees.

Before MOORE, SUTTON and FRIEDMAN,* Circuit Judges.

* Daniel M. Friedman, Circuit Judge for the

FRIEDMAN, Circuit Judge.

An employee transferred to another position filed suit against her company contending that the transfer involved discrimination against her based on her alleged disability and her gender and was made in retaliation for her filing a complaint against the company with a government regulatory agency. The district court granted the employer's motion for summary judgment and dismissed all her claims. We affirm.

## I

A. The appellant Lucille Mohr, who had been employed by the appellee The Hoover Company ("Hoover") for more than twenty-two years, was assigned in 1998 to work as a warehouseman, also known as a "high rider." She was required to operate a forklift and "ride the machine at least twenty-five feet high into the racks" to store and retrieve supplies. Appellant's Br. at 7. She had been diagnosed with Type II diabetes in 1995, and states in her brief that she had informed Hoover's medical director, Dr. Nicoletti, of her condition at that time. Id. at 8.

The present suit had its genesis when two Hoover supervisors discussed with Dr. Nicoletti the high absenteeism rate of another diabetic employee who sometimes operated a forklift. Phil Mercer. In January 2000, Dr. Nicoletti began a review of the company's policy that allowed diabetic employees to operate forklifts. During this review. Dr. Nicoletti "became concerned about the safety problems that could arise from a diabetic employee operating dangerous machinery such as a forklift." Mem. of Op. & Order at 3. As a result of his investigation, Dr. Nicoletti became aware that both Mohr and another diabetic employee, Larry Coyne, operated

Federal Circuit, sitting by designation.

forklifts for Hoover; subsequently he learned that still another diabetic employee. Larry Palmer, also operated a forklift. *Id.* at 3–4.

Hoover's medical records of Mohr revealed three separate incidents related to her blood sugar levels. Dr. Nicoletti also reviewed, with Mohr's authorization, her medical records kept by her personal physician, Dr. Mangrum, which showed that Mohr suffered a pattern of recurring "hypoglycemic episodes," including incidents where she "passed out, got lost coming home, and fell asleep standing up." *Id.* at 4. After meeting with Mohr. Coyne, and Palmer, Dr. Nicoletti recommended that only Coyne, but not Mohr or Palmer, continue to operate forklifts. *Id.* Dr. Nicoletti permitted Coyne to do so because Coyne's medical records, unlike those of the other two, did not reveal any hypoglycemic episodes and because his personal physician stated he was able to perform the work. *Id.* at 4–5. Dr. Nicoletti imposed the following medical restriction on Mohr's work: "No driving fork truck; No dangerous machinery."

Mohr's two attempts to have Dr. Nicoletti rescind his action were unsuccessful. In February 2000, Dr. Mangrum wrote Dr. Nicoletti that Mohr had told her that she was fit to operate the forklift. *Id.* at 5. Dr. Nicoletti found this letter unconvincing because it simply repeated Mohr's own opinion about her condition, and it did not state Dr. Mangrum's professional opinion. In July 2000, Mohr's new endocrinologist, Dr. Corallo, wrote Dr. Nicoletti that Mohr had not experienced any hypoglycemic episodes since Dr. Corallo had been treating her. *Id.* At that time, however, Mohr had been Dr. Corallo's patient only a little more than thirty days. *Id.* This letter also did not change Dr. Nicoletti's conclusion about Mohr's fitness for the high rider position.

After Mohr was precluded from operating the forklift, Hoover invited her to bid on fifty other positions that paid at least as much as the high rider position. She selected one of those positions and was transferred to it. In her brief Mohr asserts that she has "suffer[ed] a yearly net loss of income . . . [of] approximately $25,-0000 [sic]" because in her new position she cannot earn overtime, but she cites no record references to support the claim. Appellant's Br. at 10.

Prior to the foregoing events, in October 1999, Mohr filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging that she was required to work without the proper safety harness. Later that month, OSHA inspected the plant and issued a citation to Hoover.

B. Mohr filed suit against Hoover in the United States District Court for the Northern District of Ohio. Her amended complaint alleged that in removing her from her high rider position and transferring her to another job (the "removal and transfer"), Hoover violated the Americans with Disabilities Act, 42 U.S.C. § 12101–12213 (2000) ("Disabilities Act"). Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e–1 to 2000e–17 ("Title VII"), and the Ohio Civil Rights Act, Ohio Rev.Code Ann. §§ 4112.01–4112.99. (Because the substantive standards of the federal statutes and the Ohio legislation are the same, we discuss only the Disabilities Act and Title VII.) The amended complaint also alleged that the removal and transfer were made in retaliation for Mohr's filing the OSHA complaint. Finally, the amended complaint charged Hoover with subjecting her to emotional distress in violation of Ohio law as well as other violations of state law. Since in this appeal Mohr does not challenge the district court's rejection of those other state claims, we do not discuss

them further. We also need not discuss Mohr's challenge to the district court's denial of her motion for a continuance under Fed.R.Civ.P. 56(f), since we are satisfied that in so ruling the court did not abuse its discretion.

The district court granted Hoover's motion for summary judgment and dismissed all of Mohr's claims. It rejected her claim under the Disabilities Act because she had not shown that she was "disabled" under that Act or that, if she were disabled, she was qualified to perform the duties of the high rider position. Mem. of Op. & Order at 9–11. It held that Mohr had not established her claim of sex discrimination because she had not shown (1) that she was subject to an adverse employment action, (2) that she was qualified for the high rider position, or (3) that Larry Coyne, another diabetic employee who was permitted to operate a forklift, was similarly situated to her. *Id.* at 12–14. It rejected Mohr's claim that Hoover removed and transferred her in retaliation for her filing the OSHA complaint "because there [was] no apparent causal connection between any adverse employment action and a protected activity." *Id.* at 15.

## II

A. To sustain her Disabilities Act claim, Mohr must establish that her diabetes made her "disabled" under the Act. An individual is disabled if she has "a physical or mental impairment that substantially limits one or more … major life activities," has "a record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Since Mohr acknowledged that she was able to perform her ordinary life activities—such as dressing, cooking, cleaning, driving, etc.—the major life activity that she contends her diabetes prevented her from performing must have been working.

As she stated in her brief, she was allegedly "disqualified from an entire range [of] jobs." Appellant's Br. at 30.

The Equal Employment Opportunity Commission's regulations regarding the major life activity of "working" explain that

[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (2000).

█ The only specific job that Hoover apparently regarded Mohr as unqualified to perform was that of forklift operator, who functioned as a high rider. This is a far cry from being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." Indeed, the record here shows only that she is unable "to perform a single, particular job," which under the Commission's definition "does not constitute a substantial limitation in the major life activity of working."

█ Mohr contends that she is not disabled but that Hoover regarded her as such. To be " 'regarded as' disabled within the meaning of the [Disabilities Act]," Mohr must show that Hoover "mistakenly believe[d] that [her] actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. UPS,* 527 U.S. 516, 521–22, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Mohr contends that Hoover regarded her as disqualified from all jobs "involving the operation of machinery." Nothing in the record supports this sweeping claim. Dr. Nicoletti's medical

restriction barred Mohr only from using "dangerous" machinery. That Hoover did not regard her as precluded from performing "either a class of jobs or a broad range of jobs in various classes" is shown by its inviting her to bid on fifty different jobs.

In sum, the district court correctly concluded that Mohr had not made a *prima facie* showing that she was "disabled" under the Disabilities Act.

B. Mohr's claim that her removal and transfer involved sex discrimination in violation of Title VII fares no better.

One of the showings that Mohr was required to make to establish a *prima facie* case of gender discrimination was that "[s]he was replaced by a person outside of the protected class" or that "similarly situated non-protected employees were treated more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (internal quotation marks omitted). She has not so shown.

As noted in Part I, Dr. Nicoletti's inquiry into Hoover's allowing diabetic employees to operate forklifts as "high riders" was triggered by the discovery that a male employee doing such work was diabetic. Dr. Nicoletti eventually concluded that two diabetic male employees and Mohr no longer should be permitted to perform that work. Nothing in Dr. Nicoletti's action even suggests that it was motivated by bias or discrimination.

Mohr contends, however, that she was comparable in all material respects to Larry Coyne, who was allowed to continue as a high rider. *See* Appellant's Br. at 20–22. In *Ercegovich v. Goodyear Tire & Rubber Co.*, this court pointed out that in determining whether the employee has established a *prima facie* case of gender discrimination, "the plaintiff and the employee with whom the plaintiff seeks to compare ... herself must be similar in all

of the relevant aspects." 154 F.3d 344, 352 (6th Cir.1998).

■ Because Mohr and Coyne differ critically in the most relevant aspect to this dispute, *i.e.*, whether their diabetes adversely affects their ability safely to operate a forklift. Mohr and Coyne are not comparable. Mohr's medical records revealed a pattern of diabetes-related hypoglycemic episodes involving fainting and dizziness both in and out of work, while Coyne's physician stated that he had suffered no hypoglycemic episodes. Moreover, Coyne's physician gave his professional opinion that Coyne was medically fit to perform his job, while Mohr's physician, Dr. Mangrum, merely repeated Mohr's own opinion to that effect. Although Mohr's new endocrinologist, Dr. Corallo, subsequently stated that Mohr had not had any hypoglycemic episodes during the short time he had been treating her, he also later stated that he agreed with the restrictions placed on her in January 2000.

C. Mohr contends that in deciding the case the district court failed to follow and apply the standards for deciding such cases the Supreme Court announced in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *Reeves*, however, involved a quite different situation.

In *Reeves* an employee contended that his discharge violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, and he prevailed on that claim before a jury. The court of appeals reversed, ruling that he had not introduced sufficient evidence to sustain the jury's finding of unlawful age discrimination. The Supreme Court granted certiorari to determine whether "a plaintiff's prima facie case of discrimination .... combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is

adequate to sustain a finding of liability for intentional discrimination." *Id.* at 140. It held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," *id.* at 148, and that on the record before it the employer was not entitled to judgment as a matter of law, *id.* at 151.

Thus the issue in *Reeves* was whether the evidence that supported the employee's *prima facie* case of age discrimination, combined with evidence that would justify the trier of fact in rejecting the employer's purported non-discriminatory reason for the discharge, was sufficient to sustain the jury verdict for the employee, or whether (as the court of appeals held), the employee also was required to introduce additional evidence of discrimination. In the present case, unlike *Reeves*, the district court granted summary judgment for the employer because the employee had not established a *prima facie* case of discrimination, and we uphold that ruling. *Reeves* is irrelevant to that determination and in no way undermines it.

■ D. Finally, Mohr contends that Hoover removed and transferred her in retaliation for her filing the OSHA complaint, in violation of Title VII. To establish a *prima facie* case of retaliation, Mohr was required to show, among other things, that "there was a causal connection between the protected activity and the adverse employment action." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997). Assuming without deciding that the filing of an OSHA complaint about safety conditions at the plant is activity that Title VII protects, Mohr's retaliation claim founders upon her failure to provide any factual basis for a connection between the filing of the complaint and the action taken against her.

As we have shown, there is no reason to think that Dr. Nicoletti's "grounding" of Mohr reflected anything other than his professional judgment that her diabetic condition made her continued performance of high rider work dangerous. There is nothing to indicate, or even suggest, that Dr. Nicoletti took that action in retaliation for her filing the OSHA complaint. Indeed, Dr. Nicoletti stated in an affidavit that he did not know of the OSHA complaint when he imposed that restriction upon Mohr.

Mohr contends, however, that the relatively short time that elapsed between her filing of the OSHA complaint and her removal and transfer itself suffices to establish a causal connection. This court has stated that "the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection." *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 555 (6th Cir.2002) (internal quotation marks omitted).

In *DiCarlo v. Potter,* 358 F.3d 408 (6th Cir.2004), this court reversed a district court's summary judgment against the employee DiCarlo on his Title VII retaliation claim where the proceedings to terminate him were instituted thirteen days after he had filed an Equal Employment Opportunity ("EEO") complaint against his supervisor, Bailey. His termination was effected eight days later. This court ruled that "the temporal proximity between" the filing of the EEO complaint on March 9 and Bailey's initiation of the termination proceedings on March 22 "[was] significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive. As a result, DiCarlo ... satisfied all the elements necessary to establish a prima facie case, thereby creating a genuine issue of materi-

al fact as to whether his termination was effectuated in retaliation for his filing an EEO complaint." *Id.* at 422.

In *DiCarlo,* the employee's supervisor "Bailey admitted that he knew prior to March 22 [when he initiated the termination proceedings] that DiCarlo had in fact filed an EEO complaint." *Id.* at 421. In the present case, however, Dr. Nicoletti stated that he did not know of the OSHA complaint when he precluded Mohr from working as a high rider. In these circumstances, the "temporal proximity" between Mohr's filing of the OSHA complaint and Dr. Nicoletti's "grounding" of her is insufficient to establish a causal connection between the two events.

### CONCLUSION

The judgment of the district court granting summary judgment dismissing the complaint is affirmed.