NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0922n.06

No. 11-4150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 20, 2012*

LEONARD GREEN, Clerk

MICHAEL BERRY; JACQUELINE BERRY; )
BRENNEN BERRY, Minor child of Michael & )
Jacqueline Berry; CARSON BERRY, Minor child )
of Michael & Jacqueline Berry; TANNER BERRY, )
Minor child of Michael & Jacqueline Berry,    )     ON APPEAL FROM THE UNITED
                                              )     STATES DISTRICT COURT FOR
         Plaintiffs-Appellants,               )     THE SOUTHERN DISTRICT OF
                                              )     OHIO
v.                                            )
                                              )
FRANK'S AUTO BODY CARSTAR, INC.; )
DAVID BRINKMAN                                )
                                              )
         Defendants-Appellees.                )

BEFORE: ROGERS and GRIFFIN, Circuit Judges; HOOD, District Judge[*]

ROGERS, Circuit Judge. Michael Berry brought suit against his former employer, Frank's

Auto Body Carstar and its owner, David Brinkman, claiming that he was terminated in retaliation

for seeking medical insurance benefits for his disabled son, in violation of the Employment

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq*. He also claimed that Frank's

failed to provide him notification of his rights under the Consolidated Omnibus Budget

Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq*. The district court however properly

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

-1-

granted summary judgement in favor of Frank's, because Berry failed to show that Frank's stated reason for terminating him—participation in a heated altercation—was pretextual.

Michael Berry worked for Frank's from 2004 until September 12, 2009. He received medical insurance through Frank's and reported to David Brinkman, the owner. Berry's infant son, Brennen, was diagnosed in June 2009 with quadriplegic cerebral palsy—a condition that affects his ability to move his arms and legs and that requires medication and daily physical therapy.

On September 8, 2009, Berry got into a verbal altercation with Kristie Chisenhall, an employee at Frank's. Berry admitted that he yelled at Chisenhall to "shut up, fat bitch," "shut the fuck up," or "why don't you go home to your fucking family" and that he called her a "fat ass bitch." Berry also admitted making "hand gestures" at Chisenhall during the argument. Tim Brengle, who witnessed the argument, heard Berry say to Chisenhall, "You're going to get yours." When Chisenhall asked what Berry meant, Brengle heard Berry say, "You'll see." Lisa Wamprect, another witness, testified that Berry was "in a rage" and that she was scared and shocked by his behavior.

Immediately after the incident, Brinkman suspended both Berry and Chisenhall for three days, during which time Jodi Forman, Brinkman's human resources consultant, conducted an investigation. Forman interviewed Wamprect, Brengel, and Chisenhall; however, Forman did not interview Berry. According to Brinkman, Forman declined to interview Berry because the three witness statements—Brengel's, Wamprect's, and Chisenhall's—all "matched." Based on her investigation, Forman recommended that Berry be terminated because he "established a hostile work environment based upon his profanity laced vile tirade toward an employee of the opposite sex in

a public area of the facility in the presence of two independent witnesses." After receiving Forman's recommendation, Brinkman terminated Berry on September 12, 2009.

Berry brought suit against Frank's and Brinkman, claiming that he was terminated in retaliation for exercising his right to seek health benefits for his disabled son, in violation of ERISA, 29 U.S.C. § 1140. Berry also claimed that, after his termination, neither he nor his family was provided proper notification of their rights under COBRA, 29 U.S.C. § 1161.[1] The district court rejected both claims and entered summary judgment in favor of Frank's.[2] On the ERISA claim, the court assumed that Berry had made a *prima facie* case of retaliatory termination, but found that Berry had failed to demonstrate that the stated reason for terminating him—his argument with Chisenhall and Forman's subsequent recommendation—was pretextual. The court found no indication that Brinkman had previously tolerated conduct similar to Berry's, whose argument with Chisenhall was "of a greater scope and degree of ferocity than past disagreements." On the COBRA claim, the district court concluded that Berry was terminated for "gross misconduct" and therefore was not entitled to notification of his rights under COBRA.

The district court's grant of summary judgment was proper, even viewing the evidence and all reasonable factual inferences in favor of Berry, as we are required to do. *See, e.g.*, *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010).

---

[1]The Berrys also claimed that Frank's discriminated against Berry on the basis of his association with his disabled son, in violation of Ohio anti-discrimination law. The district court dismissed this state-law claim without prejudice, and the Berrys do not appeal that holding.

[2]The parties agreed to have a magistrate judge conduct proceedings under 28 U.S.C. § 636(c).

Under ERISA, it is "unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the [employee benefit] plan." 29 U.S.C. § 1140. We assume, as did the district court, that Berry has established a *prima facie* case of retaliation under ERISA. The burden then shifted to Frank's to provide a legitimate, non-discriminatory reason for firing Berry. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). The reason given by Frank's—Berry's argument with Chisenhall—obviously meets that standard. Berry then needed to produce enough evidence from which a jury could reasonably find that Frank's explanation was pretextual. *Id.* at 1082–84. Berry can demonstrate pretext by showing that (1) the employer's stated reason for terminating the employee had no basis in fact; (2) the reason offered for terminating the employee was not the actual reason for the termination; or (3) the reason offered was insufficient to motivate the employer's action. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012).

Berry has not supplied sufficient evidence that the reason Frank's gives was pretextual. Berry contends that his argument with Chisenhall was no worse than previous arguments between employees at Frank's. Berry cites his own affidavit as well as the affidavit of Alan Mienheartt, which both state that profanity was commonplace at the auto shop and that shouting matches between employees occurred occasionally and went unpunished. But to show pretext, Berry must put forth evidence that other employees engaged "'in acts . . . of *comparable seriousness* [but] were nevertheless retained . . . .'" *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (Title VII) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 (1976)). Here, Berry's

statements that "you're going to get yours" and "you'll see," neither of which Berry denied making, imply a threat against Chisenhall. Berry cites no previous altercation in which one employee threatened another. Nor does Berry cite a previous argument that involved hand gestures. Berry's evidence fails to show that his fellow employees engaged in conduct similar to his own and were not terminated; thus, he cannot show pretext on this basis. Thus, Berry has failed to show that other employees engaged "'in acts . . . of *comparable seriousness* [but] were nevertheless retained . . . ." *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (Title VII) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 (1976)).

Furthermore, Brinkman did not fire Berry immediately; rather, he did so only after an independent investigation concluded that Berry should be terminated. Brinkman's utilization of an independent investigator provides some evidence that he did what we have held to be sufficient: that he "made a reasonably informed and considered decision before taking [the] adverse employment action," and "reasonabl[y] reli[ed] on the particularized facts that were before" him—and Berry offers nothing to the contrary. *See Romans*, 668 F.3d at 839 (internal quotation marks omitted).

Berry also alleges that Brinkman at one point blurted out, "You guys are killing me on insurance." Evidence of discriminatory comments made by those involved in the termination decision is typically relevant to show that the reason offered for terminating the employee was not the actual reason for the termination. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000). Brinkman's single comment is too isolated to shoulder Berry's entire burden of showing pretext. As we have stated in the context of age discrimination, "[i]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of .

. . discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) (internal quotation marks omitted).

Berry also alleges that Philip DuBois, who handled health insurance for Frank's, stated that "We need to get you off the insurance" and "You're costing Dave [Brinkman] a lot of money." Because DuBois made these comments after Berry was fired and because there is no evidence that DuBois played any role in the termination decision, his comments do little to show pretext. As we have indicated, a speaker of discriminatory remarks must have played "meaningful role" in the termination decision for the remarks to be relevant. *Id.* at 354–55.

Accordingly, Berry has failed to show a material factual dispute that Frank's stated reason for firing him was pretextual.

Finally, Berry also claims that Frank's failed to notify him and his spouse of their COBRA rights after he was terminated. The district court reasoned that the Berrys were not entitled to notification of their COBRA rights because Berry was terminated "by reason of [his] gross misconduct." *See* 29 U.S.C. § 1163(2). The district court's resolution of Berry's COBRA claim was cogent and well-reasoned, and we adopt it in full.

For the foregoing reasons, we affirm the judgment of the district court.