NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0234n.06

No. 13-3750

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Mar 28, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANGELA SUMMERFIELD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAN GORNIAK, in her personal and official | ) | COURT FOR THE SOUTHERN |
| capacity as Franklin County Coroner, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; RESTANI, Judge.[*]

KETHLEDGE, Circuit Judge.  Angela Summerfield worked in the Franklin County Coroner's Office.  Coroner Jan Gorniak fired Summerfield after she released an infant's body to a funeral home, which then cremated the body against the family's wishes.  Summerfield thereafter brought this lawsuit, claiming that she was fired because of her gender.  The district court granted Gorniak's motion for summary judgment.  We affirm.

Summerfield was a forensic technician in the coroner's office.  Her duties included releasing bodies to funeral homes for cremation or burial.  Before doing so, she was required to obtain a "body release form" signed by the decedent's next of kin.  She was also required to confirm at the time of pickup that the body matched the name on the release form.

---

[*] The Honorable Jane A. Restani, Judge for the Court of International Trade, sitting by designation.

On May 19, 2010, a representative of the Marlan J. Gary Funeral Home, Charles Snodgrass, went to the coroner's office and told Summerfield that he was there to collect two bodies. One of the bodies was that of an infant, J.T. Summerfield did not have release forms for either body, so she told Snodgrass to call the funeral home and have it fax the forms over. While they waited for the funeral home to do so, Summerfield went to get the bodies. She then released them to Snodgrass—without looking at the forms, which remained on the fax machine. Had Summerfield looked at the forms, she would not have found one for J.T. Instead, she would have found a form for a different infant, C.F.

Thus, Summerfield had released the wrong infant's body to the funeral home; and the funeral home, thinking it had C.F.'s body rather than J.T.'s, proceeded to cremate it, against (albeit unknowingly) the wishes of J.T.'s family. Thereafter, Gorniak held a disciplinary hearing and fired Summerfield for "failure to perform [her] job . . . satisfactorily, safely and efficiently." This lawsuit followed.

We review de novo the district court's grant of summary judgment. *1st Source Bank v. Wilson Bank & Trust*, 735 F.3d 500, 502 (6th Cir. 2013). Under Title VII and Ohio law, Summerfield may prove gender discrimination with circumstantial evidence under the *McDonnell-Douglas* burden-shifting framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Under that framework, Summerfield must first make out a prima facie case of gender discrimination, meaning that she (i) was a member of a protected group, (ii) suffered an adverse employment action, (iii) was qualified for the position, and that (iv) "similarly situated non-protected employees were treated more favorably." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012).

Here, the parties dispute only whether Summerfield has identified any similarly situated male employees whom Gorniak treated more favorably than Summerfield. To be similarly situated, employees must be "similar in all relevant respects." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). One of those respects is that the employees "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583.

Summerfield contends that two male forensic technicians—James Stanforth and Greg Kessler—were similarly situated, but treated more favorably. The undisputed facts show that in 2009, the coroner's office received a release form from the Frank E. *Hill* Funeral Home. Stanforth read the form, but mistakenly called the Frank E. *Smith* Funeral Home to come pick up the body. When a representative from the Smith funeral home arrived, Kessler checked the form to make sure he had the right body, and released it—but without doublechecking that the Smith home was the one shown on the form. But the Hill funeral home retrieved the body soon thereafter. Stanforth received a warning; Kessler received no punishment.

We agree with the district court that Summerfield's conduct differed materially from that of Stanforth and Kessler. Specifically, Summerfield did not even look at a release form before releasing J.T.'s body, whereas Stanforth and Kessler did look at a form before releasing a body to the Smith funeral home. And an employee's failure to look at a form at all is "qualitatively more serious" than an employee's mistake in reading a form. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir. 2002). Summerfield's actions also brought more serious consequences, which is a matter often cognizable in the law: her mistake caused an infant's body to be cremated against the wishes of the infant's family, whereas the other employees' mistakes had little

consequence at all. *Id.* She therefore did not engage in the "same conduct" as Stanforth or Kessler, and thus was not similarly situated to either. *Mitchell*, 964 F.2d at 583.

The district court's judgment is affirmed.