**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0729n.06

Case No. 14-3090

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 17, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CATHERINE WILSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CHIPOTLE MEXICAN GRILL, INC., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge.[*]

SUTTON, Circuit Judge. Catherine Wilson claims that Chipotle fired her based on her race and gender. The district court rejected the claim as a matter of law and granted Chipotle's motion for summary judgment. We affirm.

Wilson, age twenty-five and African American, began working for Chipotle in July 2011 as a part-time crewmember at its Clifton restaurant near the University of Cincinnati. She was not a strong performer. Her reviews listed her as a "low performer," and she was counseled about her "attitude" at work. R. 17-5 at 5–7; R. 17-6 at 22; R. 17-7 at 8 (Page ID # 146–48, 188, 197). She apparently worked with several other not-very-strong performers, as the Clifton store had an assortment of problems. In October 2011, the company brought in new management to

---

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

try to right the ship, hiring Russell Behrman (who is white) to become the new general manager. On October 17, Wilson asked Behrman for thirteen days off in November, ten of which were needed to work at Walt Disney World to maintain her status as a seasonal employee with the Florida amusement park. Behrman was skeptical, telling Wilson that he did not think his superiors would allow the request given the store's poor performance. The pair argued, with Wilson insisting she needed the time off and Behrman insisting that the store's (and her) poor performance would get in the way. After the argument, Behrman interpreted Wilson's insistence on taking the time off anyway, whether allowed or not, as meaning she had quit. Later that day, Behrman took Wilson off the work schedule.

That apparently was news to Wilson. She returned to Chipotle the next day, when Berhman was not there, and worked part of her scheduled shift. She came back to work again on October 22. This time Behrman was there, and this time she noticed that her name had been removed from the work schedule. She asked Behrman what was going on. Behrman responded that she had quit on October 17. An argument followed. Wilson became "very combative," "emotional" and loud in a nine- to twelve-minute argument with Behrman, all in front of customers. R. 17-4 at 3–4; R. 17-5 at 21–23; R. 17-19 at 1–2 (Page ID # 119–20, 162–164, 270–71). As the conversation wound down, Wilson threatened to complain to management, after which Behrman allegedly said no one would believe a "black dyke bitch." R. 17-5 at 22 (Page ID # 163). Even though this remark allegedly took place at the end of the argument in front of many other individuals, Wilson has identified no other person who heard it. Many witnesses by contrast heard Wilson's harangue against Behrman. After Wilson left the restaurant, she called Chipotle District Manager Herman Mobbs, an African American, and complained about what had happened. Mobbs investigated the incident and concluded that Wilson should not get her job

2

back due to her loud and disrespectful conduct on October 22. After interviewing many other individuals as well, Mobbs found no misconduct by Behrman.

Wilson filed this lawsuit in January 2012, claiming race and gender discrimination under Title VII and state law. *See* 42 U.S.C. § 2000e-2(a)(1); Ohio Rev. Code § 4112.02(A). After discovery, the district court granted Chipotle's motion for summary judgment.

We give fresh review to the summary judgment decision of the district court. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 569 (6th Cir. 2003) (en banc). The question there, and here, is whether Chipotle is entitled to judgment as a matter of law because "no genuine dispute as to any material fact" stands in the way, even after giving Wilson (the nonmovant) the benefit of all reasonable inferences from the record. Fed. R. Civ. P. 56(a); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

On appeal, Wilson does not claim to have any direct evidence that Chipotle fired her based on race or gender. She instead claims that indirect or circumstantial evidence shows as much. In this context, we employ the familiar *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973), which applies equally to Title VII and Ohio's counterpart employment-discrimination law. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

To survive summary judgment under this framework, Wilson initially must show that she (1) is a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class or was treated differently than similarly situated, nonprotected employees. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 892–93 (6th Cir. 2012). If the plaintiff makes out this prima facie case, the burden shifts to the employer to offer evidence of a nondiscriminatory reason for its action. *Id.* at 893.

3

If the employer offers such evidence, the burden shifts back to the plaintiff to show that this alleged reason for the adverse employment action was not the real reason but a pretextual one and that the employer fired the employee based on race or gender. *Id.*

The district court concluded as an initial matter that Wilson failed to establish a prima facie case of discrimination because no adverse employment action occurred and because she was not replaced by someone outside the protected class or otherwise treated differently than like-situated nonprotected employees. We cannot agree with the first point but accept the second. As to the first point, it is no doubt the case that an employee who voluntarily resigns from a job may not bring a claim under Title VII (or its Ohio counterpart) because it is the employee's, not the employer's, action that generated the departure. Nor need an employee utter the words "I quit" before falling into this camp. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 555 (6th Cir. 2008); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 448–49 (6th Cir. 1999). Yet when we give all reasonable inferences to Wilson's evidence, a genuine factual dispute remains. Several pieces of evidence support Wilson's position that she did not quit on October 17. The most obvious comes from her deposition, in which she denies saying she was quitting or would quit. She also denies giving an ultimatum to Behrman about her time-off request. Her actions matched her words. She returned to work the next day, and Behrman's fellow manager Michael Brent Moore, who witnessed the prior day's conversation, was the manager on duty and never told her to leave. This evidence suffices to create a genuine factual dispute over whether Wilson left the job voluntarily.

While we disagree with the district court's contrary conclusion, we must acknowledge one intuition that supports it. Wilson, true enough, has created a triable issue of fact over whether she quit on October 17. But the same is not true over whether she would have stayed on

the job much longer. When Wilson spoke to Mobbs after the incident on October 22, she insisted that she would be taking time off in November to work at Disney. Nowhere in the record does she deny saying this to Mobbs. Yet neither at that time nor earlier did she receive permission to take the time off. The die in short was cast, and by mid-November Wilson would be leaving the job one way or another—either because she voluntarily quit by taking the time off and never returning or because the company would not accept her back after she insisted on taking an extended and unpermitted absence from the job. This problem diminishes her claim considerably.

The district court's second explanation for concluding that Wilson failed to establish a prima facie case eliminates her claim completely. Wilson offered no evidence that Chipotle replaced her with white or male employees. To the contrary, Wilson's part-time slot was picked up by three African-American females and one African-American male. The Clifton branch work force was 75% African American during the relevant period, and Wilson offers no evidence that this changed at the time. Nor has Wilson shown that Chipotle treated "similarly situated, nonprotected employees . . . more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002); *see Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). Wilson makes no attempt to point to a white or male employee who received time off comparable to her request or otherwise insisted on taking such time. Wilson makes no attempt to point to a white or male employee who engaged in a nine- to twelve-minute shouting match with a manager in front of customers and yet remained employed. The only thing the record shows is to the contrary. After Chipotle discovered that Behrman made a disparaging remark to another employee, he too was fired. Having failed to identify any relevant comparator, it follows that

5

Wilson cannot shoulder her burden of identifying anyone who, like her, was a "low performer" and who had already been counseled about subpar job performance.

That leaves the remark Behrman allegedly made to Wilson—that she was a "black dyke bitch"—as she left the restaurant on October 22 and threatened to complain about Behrman. This may well show that Wilson and Behrman were *both* intemperate. But it does not by itself establish a cognizable claim of employment discrimination. Wilson did not bring a hostile-work-environment claim but an improper-firing claim. By the time of the comment, the predicates for firing Wilson had already taken place: her combative and public argument with Behrman on October 22 arising from her continued insistence on taking ten days off in November. Because Wilson has identified no other statements of this ilk, this stray remark does not suffice by itself to show the differential treatment required to establish her case. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 549 (6th Cir. 2004).

That leaves the last ground for the district court's decision. Even if Wilson could make out a *prima facie* case of discrimination, the court concluded that Chipotle had legitimate reasons for firing her that were not pretextual. We agree. We break no new ground in concluding that a company may fire someone who admittedly was a low performer and who admittedly lost her cool in front of customers. Wilson acknowledges that she was "very combative" and publicly lost her temper for an extended period of time on October 22. She offers no nonprotected comparators who were similarly situated to her, who did the same things, yet were allowed to stay on. This too suffices to reject her claims as a matter of law.

For these reasons, we affirm.