**Jeffrey OPSATNIK, Appellant**

v.

**NORFOLK SOUTHERN CORPORATION.**

No. 08–2177.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) May 19, 2009.

Opinion: Filed July 7, 2009.

Lois Glanby, Esq., McMurray, PA, Robert M. Owsiany, Esq., Law Offices of Lois Glanby, Pittsburgh, PA, for Appellant.

Thomas H. May, Esq., Dickie, McCamey & Chilcote, Pittsburgh, PA, Thomas A. Shumaker, II, Esq., Norfolk Southern Corporation Law Department, Norfolk, VA, for Norfolk Southern Corporation.

Before: FUENTES, JORDAN, and NYGAARD, Circuit Judges.

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Jeffrey Opsatnik ("Opsatnik") appeals an order of the United States Dis-

trict Court for the Western District of Pennsylvania granting summary judgment in favor of Norfolk Southern Corp. ("Norfolk Southern" or "NSR") on his claim of unlawful discrimination based on his race, gender, or age. For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

Because we write exclusively for the parties, we only discuss the facts to the extent necessary for resolution of the case. Opsatnik is a Caucasian male over the age of forty. He worked as a locomotive engineer for Norfolk Southern or its predecessor for ten years.[1] On September 8, 2004, he was the engineer on an NSR "key train"—a train containing cars carrying hazardous materials—operating between Toledo, Ohio and Conway, Pennsylvania, near Pittsburgh. En route, Opsatnik was instructed by a dispatcher to reduce the speed of the train to a maximum of forty mph in observance of weather-related speed restrictions.

Although Opsatnik did not follow the dispatcher's instructions, the NSR train reached its destination without incident. Neither Opsatnik nor his conductor, however, properly secured the train upon returning to the yard. As a result, Norfolk Southern officials reviewed the on-board event recorder, which revealed that during the return trip, the train exceeded the forty mph speed limit eight times. Fur-

ther, on two additional instances the train exceeded the normal authorized track speed of fifty mph.

Prior to this incident, Opsatnik had been disciplined by Norfolk Southern at least four other times. On April 24, 2001, Opsatnik received a ten-day deferred suspension for failure to take calls and for attempting to persuade another employee to falsify records. Then, on October 15, 2001, NSR cautioned Opsatnik for making a "shove move" without permission. On December 13, 2002, Norfolk Southern imposed a thirty-day deferred suspension on Opsatnik for a speed violation in the yard. Finally, on December 23, 2002, Opsatnik received a thirty-day deferred suspension for failing to report an injury.[2]

In connection with the September 8, 2004 incident, Opsatnik was charged with failure to properly secure a locomotive, improper train handling, and excessive speeding. Two weeks later, he was terminated by Norfolk Southern following a formal hearing before the terminal superintendent. Subsequent appeals by Opsatnik's labor union to the divisional superintendent and to the Special Board of Adjustment were unsuccessful.

Opsatnik does not deny that he disregarded the dispatcher's instructions or that he operated the train at speeds in excess of the weather-related speed restriction. He argues, however, that his punishment was improper because it was motivated by his race, gender, or age.[3]

---

1. Opsatnik was originally hired by Consolidated Rail Corp. ("Conrail") on August 22, 1994. He became an employee of Norfolk Southern on June 1, 1999 after NSR acquired Conrail's assets. Opsatnik was employed in the Pittsburgh division from this time until his employment was terminated on September 21, 2004.

2. Opsatnik's failure to report the injury triggered the thirty-day deferred suspension for

the speed violation in the yard, and he was actually suspended by NSR.

3. Opsatnik brought this "reverse discrimination" claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*

He contends that Norfolk Southern disciplined him more severely than similarly situated African American, female, and younger employees who committed similar infractions. The District Court granted NSR's motion for summary judgment, and this appeal followed.

## II.

We exercise plenary review over the District Court's grant of summary judgment. *Albright v. Virtue*, 273 F.3d 564, 570 (3d Cir.2001).[4] In determining whether the grant of summary judgment was appropriate, we must review the burden-shifting analysis adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Cases alleging unlawful discrimination are to proceed in three steps: the plaintiff must first establish a prima facie case that the act was discriminatory. *Id.* at 802, 93 S.Ct. 1817. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* To prevail, the plaintiff must then prove by a preponderance of the evidence that the articulated reason was a pretext for discrimination. *Id.* at 804.

It is unnecessary to discuss prongs one and two of the burden shifting analysis. Assuming that Opsatnik could establish a prima facie case that the adverse employment action was discriminatory, we find that Opsatnik's admitted and uncontested speed violation suffices to discharge Norfolk Southern's subsequent burden to articulate a legitimate, nondiscriminatory

reason for its action. Therefore, we will only consider whether the District Court erred as to Opsatnik's burden of proving pretext. We have held that in order to survive summary judgment, a plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

## III.

Opsatnik relies on the career service records of twenty-four current and former NSR and Conrail employees to prove that Norfolk Southern's stated reason for terminating him was a pretext for discrimination. Opsatnik claims that these employees had disciplinary records similar to or worse than his but were not discharged by NSR. He argues that the District Court erred in holding that he could not compare himself to employees from other divisions or employees who had committed non-operational violations. Opsatnik claims that NSR's company-wide disciplinary program allows for such comparisons to be made, and that the District Court was wrong to apply such a strict definition of "similarly situated."

The District Court concluded that the twenty-four purported comparators could not be used for the purpose of demonstrating pretext because those employees were not similarly situated to Opsatnik. While "similarly situated" does not mean identically situated, the plaintiff must neverthe-

---

4. Summary judgment is proper only if there are no genuine issues of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitle to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is not the duty of a judge to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

less be similar in "all relevant respects." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Which factors are relevant is determined by the context of each case, but often includes a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992); *see also Johnson v. Kroger Co.,* 319 F.3d 858, 867 (6th Cir.2003)) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998))).

The Supreme Court has held that evidence offered in a discrimination case concerning purported comparators with different supervisors is neither per se admissible nor per se inadmissible. *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 128 S.Ct. 1140, 1146, 170 L.Ed.2d 1 (2008) ("[Q]uestions of relevance and prejudice are for the District Court to determine in the first instance.") (citing *United States v. Abel,* 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)). We will uphold the grant of summary judgment unless the District Court has abused its discretion in determining that the comparator evidence offered by Opsatnik was not relevant. *Id.* at 1145, 128 S.Ct. 1140.

As an initial matter, the District Court noted that over half of the purported comparators offered by Opsatnik were not employed in the Pittsburgh Division and therefore were not subject to the authority of the decision-makers in Opsatnik's disciplinary proceeding or appeal. Although there can be no per se rule that comparator evidence from employees with different supervisors is irrelevant, we agree that Opsatnik failed to present evidence suggesting a link between the purported comparators and the motivations of the decision-makers who terminated Opsatnik. Therefore, such comparators do not cast doubt on NSR's stated reason for terminating Opsatnik.

Additionally, Opsatnik offers as comparators several other employees who committed non-operational offenses, including violations of the attendance policy and the drug and alcohol abuse policy. Again, while "similarly situated" does not mean identically situated, purported comparators must have committed offenses of "comparable seriousness." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 710 (6th Cir.2006) (citing *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir.2002)). Opsatnik argues that any "major" violation under Norfolk Southern's disciplinary framework is automatically comparable. We disagree; a non-operational violation concerning absenteeism or substance abuse cannot be considered of "comparable seriousness" to an operational violation such as speeding, especially when the violation involved operating a "key train" carrying hazardous materials. Comparisons such as these do not cast doubt on NSR's stated reason for terminating Opsatnik.

Of the twenty-four alleged comparators offered by Opsatnik, only four were both employed at the Pittsburgh Division and disciplined for excessive speed violations. Opsatnik apparently relies on these comparators as proof that Norfolk Southern has in the past suspended employees for excessive speed violations rather than terminating them. The evidence, however,

actually cuts the other way. The speed violations by the purported comparators were either the first operational violations committed by the employee whatsoever, or the first during the relevant period, and none involved the transportation of hazardous materials. Opsatnik, on the other hand, had been disciplined by NSR on at least four prior occasions for both operational and non-operational violations. We conclude therefore that each of these cases involve mitigating circumstances that distinguish their conduct from Opsatnik's and foreclose his ability to claim that they are similarly situated.

## IV.

We agree with Opsatnik that he has identified several individuals who committed violations of either such frequency or severity that they *could* have been discharged under NSR's policy. We cannot say, however, that the District Court erred in determining that these comparators do not create a genuine issue of material fact. Opsatnik's comparator evidence does not cast doubt on NSR's otherwise satisfactory explanation for his termination. Accordingly, we affirm the order of the District Court granting summary judgment in favor of Norfolk Southern.