NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0713n.06

No. 08-6387

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 03, 2009
LEONARD GREEN, Clerk

CAROLYN JOHNSON,

    Plaintiff-Appellant,

v.

INTERSTATE BRANDS CORPORATION,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of
Tennessee at Memphis

_____/

**Before:    MARTIN, GUY, and McKEAGUE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Carolyn Johnson appeals from the

entry of judgment in favor of defendant Interstate Brands Corporation with respect to her

claim that she was discharged because of her age in violation of the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. § 623(a). Plaintiff argues that it was error to conclude

that she failed to make a *prima facie* showing of age discrimination or present evidence

sufficient to create a question of fact on the issue of pretext. After review of the record, we

affirm.

**I.**

Plaintiff Carolyn Johnson had worked ten years in various positions at defendant's

mass-production bakery in Memphis, Tennessee, when she was discharged following an

altercation with coworker Cassandra Boyce for violating the defendant's Workplace

Violence Policy. That Policy stated in part that:

> Violence threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated: that is, all reports of incidents will be taken seriously and will be dealt with appropriately. Such behavior can include oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm. Individuals who commit such acts may be removed from the premises and may be subject to disciplinary actions, criminal penalties, or both.

Also, the Employee Handbook, which plaintiff acknowledged receiving, included the following among the offenses that would result in immediate dismissal on the first offense: "Fighting, horseplay or disorderly conduct."

The altercation in question occurred in the break room on February 26, 2006, although Johnson and Boyce gave different accounts of the incident. Boyce indicated in her handwritten statement that she was washing her hands when plaintiff approached and started arguing with her. Boyce stated that she turned from the sink, shook her hands while grabbing the paper towels, and told plaintiff that she was "too old" to act that way. According to Boyce, plaintiff then swung and struck Boyce across her arm.

Plaintiff, on the other hand, says that when she came into the break room, Boyce, who was washing her hands, started cursing at her and then flung water into plaintiff's face. Plaintiff warned Boyce not to do it again, and Boyce came at her to spray water on her again. Plaintiff raised her arm "reflexively"[1] to "block" the water and her arm made contact with Boyce's arm. Boyce reported the incident to a supervisor, and plaintiff talked to a union

---

[1]Plaintiff's deposition, the parties' briefs, and the district court state that she raised her arm as a "reflect action" or "reflectively." This could only really mean as a reflex, or reflexively. We have taken the liberty of using the latter, as it appears that it is the meaning she intended.

steward. Both plaintiff and Boyce were suspended pending an investigation and sent home.

The investigation, conducted by then Human Resources Manager Arnold Langston, included interviews with plaintiff, Boyce, and the other employees who were in the break room. Several witnesses reported that plaintiff and Boyce called each other names, including that Boyce called plaintiff an "ignorant old bitch" and that plaintiff called Boyce a "bitch" for getting her wet. One witness said he came in to see plaintiff chasing Boyce, and stepped in to separate them. Langston recommended that they both be discharged because he felt they were "equally at fault." After the recommendation was reviewed, however, plaintiff was discharged and Boyce was suspended without pay for one month. Langston explained that, in light of defendant's past disciplinary practices, it was believed to be likely that Boyce's discharge would not withstand a grievance because she made no physical contact with plaintiff.[2]

In this action, initially filed in state court and amended after removal, plaintiff alleges that she was discharged because of her age in violation of state and federal antidiscrimination laws. *See* 29 U.S.C. § 623(a); TENN. CODE ANN. § 4-21-401. Defendant moved for summary judgment, and plaintiff filed a response in opposition. On August 12, 2008, the district court granted defendant's motion for summary judgment on the ADEA claim and declined to exercise jurisdiction over the state law claim. Plaintiff filed a timely motion for reconsideration, which the district court denied on October 10, 2008. In this appeal, plaintiff

---

[2]Plaintiff notes that Boyce had a disciplinary record that included a number of "write ups" for attendance violations, as well as a discharge and reinstatement under a "last chance" agreement for refusing to follow a supervisor's orders. Langston testified that the "last chance" agreement was specific to the insubordination, and Boyce was not discharged for four intervening attendance violations.

challenges the judgment with respect to her ADEA claim, only.

## I.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the district court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for reconsideration under Fed. R. Civ. P. 59(e) may be granted if there is clear error of law, newly discovered evidence, an intervening change in the controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). When, as here, an appeal is from the grant of summary judgment as well as the denial of a Rule 59(e) motion to reconsider that decision, this court conducts a *de novo* review using the same standards the district court was required to apply. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999).

The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). When, as here, the plaintiff relies on circumstantial evidence to establish a disparate-treatment claim under the ADEA, we continue to apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009). The plaintiff must prove that age actually motivated the employer's allegedly disparate treatment. *Ky. Ret. Sys. v.*

*EEOC*, 128 S. Ct. 2361, 2366 (2008).  Also, as the Supreme Court recently clarified, "the plaintiff retains the burden of persuasion [under the ADEA] to establish that age was the 'but-for' cause of the employer's adverse action."  *Gross v. FLB Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009).[3]

## A.    *Prima Facie* **Case**

To establish a *prima facie* case of age discrimination, plaintiff bears the burden of demonstrating that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) either she was replaced by a person outside the protected class, or she was treated differently than a similarly situated non-protected employee.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).  There is no dispute that plaintiff—who was 45 years old at the time of her discharge—was in the protected class of employees over the age of 40.  29 U.S.C. § 631(a).  Nor does defendant deny either that plaintiff was qualified or that her discharge constituted an adverse employment action.  To meet the fourth prong, plaintiff argued that she was disciplined more harshly than a similarly situated younger employee.  The district court found, however, that plaintiff failed to demonstrate that Boyce, age 25, was similarly situated to plaintiff in "'all *relevant* respects.'"  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citation omitted).

While the relevant aspects may vary depending on the facts and circumstances of a

---

[3]Although the Supreme Court has not definitively decided whether the *McDonnell Douglas* framework applies to ADEA claims, *Gross*, 129 S. Ct. at 2349 n.2, we are without authority to overrule the published decisions of this court absent an inconsistent decision of the Supreme Court or an *en banc* decision of this court to the contrary, *Geiger*, 579 F.3d at 622.

given case, in the disciplinary context we have considered whether the individuals "'have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id*. at 352 (quoting *Mitchell*, 964 F.2d at 583). First, although the record does not reflect whether plaintiff and Boyce had the same immediate supervisor, the relevant inquiry in this case is that their respective discipline was determined by the same ultimate decision makers. *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *see also Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 481 (6th Cir. 2008). Plaintiff and Boyce were subject to the same standards reflected in the employment policies that both were found to have violated but were found not to have engaged in the same conduct.[4]

For the conduct to be the same without such differentiating or mitigating circumstances that would distinguish it or the employer's treatment of it, it must be of comparable seriousness—*i.e.*, similar in kind and severity. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002); *Barry*, 276 F. App'x at 483. For example, in *Clayton*, the plaintiff, an African American, and several other employees, all of whom were white, committed similar acts of negligence by driving a truck away from a loading dock without ensuring that the rear doors were closed. All four employees were disciplined but only Clayton was

---

[4]The district court rejected plaintiff's belated claim—made for the first time in her motion for reconsideration—that she had not violated defendant's Workplace Violence Policy. Under a heading raising this issue on appeal, plaintiff does not actually dispute that the policy encompassed her conduct but reiterates her claim that her conduct was a reflexive action triggered by Boyce's attempt to throw water on her a second time.

discharged. However, Clayton was also the only one whose conduct resulted in serious injury to another coworker. Although Clayton's conduct was similar in kind, the employer was permitted to consider the consequences of the conduct. This was recognized to be the differentiating circumstance that distinguished Clayton's conduct from that of the others and precluded an inference of discrimination.

In this case, defendant differentiated between plaintiff and Boyce on the grounds that Boyce did not touch plaintiff, while plaintiff admitted that her arm made physical contact with Boyce's arm. Plaintiff asserts that Boyce made "physical contact" with her by flinging water that landed on her. In support, plaintiff relies on Langston's testimony that it would violate the Workplace Violence Policy to use an object to physically strike someone. Nothing in that interpretation is inconsistent with the employer's determination that flinging water at someone is not the same as either physically striking, or using an object to physically strike, another.

Plaintiff also faults the district court for finding her claim of "self defense" was unavailing because she could have walked away after being sprayed with water the first time. Plaintiff argues that there was no evidence that she did *not* attempt to walk away, but, there was also no evidence that she did. More importantly, in determining the appropriate discipline, defendant distinguished between misconduct that involved physical touching, intentional or otherwise, and misconduct that did not. Because defendant's past disciplinary practices reflected this distinction, it was believed that defendant could not sustain Boyce's discharge in a grievance proceeding. Physical contact was the differentiating circumstance

that distinguishes between the conduct of plaintiff and Boyce, as well as the defendant's treatment of it. The district court did not err in finding that plaintiff was not similarly situated to Boyce in all relevant respects.

**B.     Pretext**

Defendant's proffered nondiscriminatory reason for plaintiff's discharge—that plaintiff violated defendant's Workplace Violence Policy and had physical contact with another employee in the process—is "clear and reasonably specific," *Burdine*, 450 U.S. at 258, and is supported by evidence which, if believed, would allow the trier of fact to conclude that the discharge was not motivated by discriminatory animus, *id.* at 259. Once a defendant has met its burden of production, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but was pretext masking intentional discrimination. *Id.* At this final stage, the burden of production essentially merges with the plaintiff's ultimate burden of persuasion, which always rests with the plaintiff. *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004).

Pretext may be established directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer's action, or "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. A plaintiff can demonstrate that an employer's explanation is not credible by showing that it (1) has no basis in fact, (2) did not actually motivate the discharge, or (3) was insufficient to warrant discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994); *see also Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

Plaintiff faults the district court for finding that the first category was inapplicable because plaintiff "admitted that she made physical contact with Boyce and that Boyce did not make physical contact with her." It is undisputed, however, that the reasons for *plaintiff's* discharge were not factually false. Plaintiff conceded that she made physical contact with Boyce, which defendant determined was a violation of the Workplace Violence Policy. Despite her disagreement with defendant's application of its policy, plaintiff does not dispute that defendant had an honest belief in its reasons for discharging her. *Sybrandt v. Home Depot, Inc.*, 560 F.3d 553, 559 (6th Cir. 2009); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse action").

The third method of proving pretext—that the reason was insufficient to warrant discharge—usually "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. Here, plaintiff again points to Boyce as evidence that a similarly situated nonprotected employee received lesser discipline for the substantially identical conduct. As discussed earlier, plaintiff and Boyce were not similarly situated in all *relevant* respects.

Finally, under the remaining method of proof—demonstrating that the proffered reason did not actually motivate the discharge—"the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could*

motivate dismissal." *Id.* The plaintiff indirectly attacks the credibility of the employer's explanation "by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id*. Although plaintiff abandons her reliance on allegations that defendant mistreated older employees, plaintiff's assertion that other employees might be able to establish a *prima facie* case of age discrimination in no way establishes that the defendant's reason for discharging plaintiff was pretext for age discrimination. *See Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (noting that trial courts regularly prohibit "me too" evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant). Nor is the evidence that *Boyce* referred to the age of plaintiff and another older employee in a derogatory way sufficient to show that the defendant's proffered reason did not actually motivate plaintiff's discharge.

This ADEA claim, boiled down to its essence, is that plaintiff *felt* discriminated against because Boyce did not get fired too. When asked what evidence she had to show that she was discharged because of her age, plaintiff answered: "I do not have any." A plaintiff's conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment. *Mitchell*, 964 F.2d at 585. Plaintiff has not presented evidence sufficient to allow a reasonable trier of fact to conclude that intentional age discrimination was the "but for" cause of defendant's decision to discharge plaintiff. *Gross*, 129 S. Ct. at 2351; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

**AFFIRMED**.