NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0158n.06

No. 09-3247

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LARRY GREEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| FIDELITY INVESTMENTS, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: MARTIN and WHITE, Circuit Judges; ZOUHARY, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.** Larry Green appeals from the district court's grant

of summary judgment to Fidelity Investments (Fidelity), dismissing Green's claims of age

discrimination, breach of contract, defamation, and tortious interference with business relationships.

We affirm.

**I.**

The district court opinion sets forth the relevant facts:

On September 14, 1999, Plaintiff Larry Green began working for Defendant
Fidelity Investments ("Fidelity") as a financial service representative. At that time,
Green signed an Employee Agreement acknowledging that his employment was
at-will. While employed at Fidelity, Green became licensed by the National
Association of Securities Dealers ("NASD").

In May of 2005, Green transferred to Fidelity's Investments Department to
work as an Investment Representative ("IR"). As an IR, Green answered calls from

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio,
sitting by designation.

current and potential customers to assist them with their financial needs, and refer them to other Fidelity departments. Green was required to "qualify" potential customers to determine which Fidelity products and services were suitable. To properly qualify a caller, an IR must ask each caller a series of pre-determined questions. When an IR determines that a caller is qualified for a particular product or service, the IR marks a "lead" in the caller's account. A lead identifies the specific product or service for which a caller is qualified and may be interested. Based on the type of lead designated, a Fidelity business partner who specializes in that product or service will then contact the caller to provide additional information and attempt to complete the transaction. IRs are evaluated, in part, on the number and quality of leads they generate. IRs receive monetary incentives such as bonuses, trips and other awards based on their lead volume.

As an IR, Green produced a high lead volume. Green won several sales campaigns and trips, including one to Las Vegas. Green also won several awards for customer service.

However, Green was also disciplined several times. In July of 2000, Green's supervisor at the time, Todd Kollman, placed him on corrective action for repeatedly violating the company's break policy. In January of 2001, Green's supervisor, Dawn Brewer, issued him a "Final Written Warning" for improperly taking credit for leads. Brewer wrote: "Such inappropriate coding of calls will not be permitted . . . . Improper coding, and ultimately receiving and taking credit for leads not transferred to the Investments department . . . is unacceptable." Brewer also stated: "This warning will remain in effect for the duration of your employment with Fidelity Investments." In June of 2003, Green's supervisor at the time, Andrew Ritter, issued him another Final Written Warning for providing confidential account information to a caller whose identity he did not verify. In August of 2004, Green's supervisor, Scot Herrmann, issued him a ninety-day warning for excessive trading errors. In March of 2005, Green was placed on probation for continued excessive trading errors.

In March of 2006, [Green's supervisor, Dina] Rulli attended a training session for team managers designed to improve employee performance. Rulli and the managers listened to a call handled by Green and questioned whether he had taken credit for a lead without qualifying the customer.

Rulli met with Green and played the call for him. Green admitted that he had not discussed the criteria required to enter and obtain credit for the lead.[1] Rulli

---

[1]In his deposition, Green testified:

> Q: And then you agreed with her in this meeting that you should not have taken credit for a lead, correct?
>
> A: I shouldn't have checked the box.

informed Green that she planned to review more of his calls, and she asked whether she would find other such calls. Green assured Rulli that she would not.

After meeting with Rulli, Green reviewed his notes from the call. Green recalled that he had been told that the best way to communicate with the Income Planning department was through a lead. Green wanted to be sure that the proper person from the department contacted the customer. Green approached Rulli and told her that she could delete the lead from his total.

When Rulli reviewed a sampling of Green's calls from March 2006, she found that Green had falsified leads for at least six other calls during that month. Rulli did not speak to Green about these calls. Instead, Rulli sent an email to her supervisor, Mary Svitkovich, and a human resources representative, Heidi Fortune explaining that:

> It was discovered that Larry Green has been inappropriately submitting leads, therefore obtaining credit for work not performed. Leads were submitted for business partners in Annuities, PAS (Portfolio Advisory Services), and Income Planning in instances where these products and services were never discussed with clients. This behavior is a manipulation of the systems to receive credit for work that was not completed. This does have an impact on review scores, quarterly bonuses, and campaign awards. This is a clear violation of our policies and procedures.

Rulli, Fortune and Svitkovich agreed that Green should be terminated for violating Fidelity policy. On March 27, 2006, Rulli met with Green and informed him that his employment was being terminated because he inappropriately submitted a lead. Green was 52 years old at the time.

Under federal securities law, Fidelity was required to submit a Form U5 to NASD within thirty days of Green's termination. Form U5 requires Fidelity to explain why the individual's registration is being terminated, and then verify the accuracy and completeness of the information. Fidelity provided the following reason for terminating Green: "[E]mployee violated department procedures by recording leads to business partners when he did not have the requisite substantive conversations with the customers."

In his Amended Complaint, Green claims age discrimination under the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code § 4112.02(A). Green also brings claims of breach of implied contract, defamation, and interference with prospective employment under Ohio law.

---

> Q: And by checking the lead box, that was one of the leads that then goes into your incentives statistics. Right?
>
> A: Right. That would have gone there.

*Green v. Fidelity Invs.*, 2009 U.S. Dist. LEXIS 9949 at *1-*7 (S.D. Ohio Feb 11. 2009) (citations omitted).

**II.**

We review the district court's grant of summary judgment de novo. *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the burden of proving that there are no genuine issues of material fact." *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The non-moving party must then "come forward with 'specific facts showing a genuine issue for trial.'" *Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(e)(2)). "When we review a motion for summary judgment, we must view all facts and inferences in the light most favorable to the non-moving party." *Hall v. Spencer County, Ky.*, 583 F.3d 930, 933 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**A. Age-Discrimination Claim**

Green contests the grant of summary judgment on his age-discrimination claim under the ADEA and the Ohio Revised Code.[2] The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Green does

---

[2]The elements and burden of proof of an age-discrimination claim under Ohio law parallel an ADEA claim. *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 785 (6th Cir. 2007); *see also Conley v. U.S. Bank Nat'l Ass'n*, 211 F. App'x 402, 409 (6th Cir. 2006) (unpublished) ("Because summary judgment is proper on [appellant's] ADEA claim, his claim under O.R.C. § 4112.02 also fails.").

4

not present direct evidence of age discrimination, but contends that he can make out a *prima facie* case based on circumstantial evidence. He presents as evidence his firing, despite being a "top performer"; the firing of another protected-age co-worker, Debbie Collins, also for violating company policy;[3] the poor treatment of a third protected-age co-worker, Tamara O'Brien; and evidence that Rulli socialized more with younger employees.

This court applies the *McDonnell Douglas* burden-shifting framework to ADEA claims that rely on circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). To set forth a *prima facie* case of age discrimination, a plaintiff must establish that he or she was: 1) a member of the protected class (i.e., at least forty years old); 2) subject to adverse employment action; 3) qualified for the position; and 4) replaced by someone outside the protected class or treated differently from a similarly-situated employee outside the protected class. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "The plaintiff retains the ultimate burden of proving that 'age was the "but-for" cause of the employer's adverse action.'" *Harris v. Metro. Gov't of Nashville & Davidson County*, 594 F.3d. 476, 485 (6th Cir. 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009), and *Ky. Ret. Sys. v. EEOC*, 128 S. Ct. 2361, 2366 (2008)).

Green concedes that he cannot establish the fourth factor, as he was not replaced and can point to no similarly-situated non-protected employee treated better than he. Green argues, however, that the district court erred by rigidly applying the *McDonnell Douglas* test and that the court should

---

[3]Green concedes that Collins was fired for violating company policy. Collins used a customer's password to access account information for the client, who wanted information available on-line but was not near a computer. Green claims that Collins "could have been counseled" instead of being fired. Appellant's Brief at 32.

5

have applied a more flexible standard. Specifically, Green claims that the test is inapplicable because Rulli had "no control over who joined the team"—and thus no inference could be drawn from the fact that he was not "replaced"—and because he "did not assert that there was a similarly situated younger person who was treated better," but rather "pointed to other circumstantial evidence of discrimination." Appellant's Brief at 31.

While it is true that the *McDonell Douglas* test should not be formalistically applied, *see, e.g.*, *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 165-66 (6th Cir. 2004), this court routinely affirms the grant of summary judgment for failure to establish a *prima facie* case based on the *McDonnell Douglas* criteria. *See, e.g.*, *Balding-Margolis v. Cleveland Arcade*, No. 09-3017, 2009 WL 3735902, at *4 (6th Cir. Nov. 9, 2009) (unpublished) (affirming summary judgment on failure to present evidence of replacement by a younger worker or more favorable treatment of a similarly situated younger employee); *Johnson v. Interstate Brands Corp.*, No. 08-6387, 2009 WL 3583397, at *3 (6th Cir. Nov. 3, 2009) (unpublished) (affirming summary judgment where younger comparison employee was not similarly situated); *Gaffney v. Potter*, 345 F. App'x 991, 993 (6th Cir. 2009) (unpublished) (finding a lack of a similarly situated non-protected employee fatal to both Title VII and ADEA claims). The fact that Green cannot establish a *prima facie* case under the framework is not itself a sufficient reason to dispense with the test in favor of a more forgiving standard. Regardless, under any standard, Green's circumstantial evidence, consisting primarily of perceived social slights and his own subjective view that his performance made the decision otherwise irrational, do not suggest that his age was the "but-for" cause of his termination.[4]

---

[4]Because we find that Green did not establish a *prima facie* case of age discrimination, we need not reach the issue whether Fidelity's stated reason for his firing was pretextual.

6

**B. Breach of Implied Contract**

Green next argues that the district court erred when it granted summary judgment on his breach of implied contract claim. Green contends that he observed a practice at Fidelity of progressive discipline, which created an implied contract that he would only be fired for cause. This claim is without merit as no implied contract existed. As the district court noted, "not only did Green sign an agreement stating that his employment was at-will, but Fidelity's Corrective Action Policy expressly states that 'it does not create a contract of employment' and that 'certain conduct may warrant immediate termination.'" *Green v. Fidelity Investments*, 2009 U.S. Dist. LEXIS 9949, at *16 (S.D. Ohio Feb 11, 2009) (citation omitted). Under Ohio law, "[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." *Wing v. Anchor Media, Ltd.*, 570 N.E.2d 1095, 1098 (Ohio 1991) (citation omitted); *see also Smiddy v. Kinko's Inc.*, No. C-020222, 2003 WL 203576, at *5-*6 (Ohio App. Jan. 31, 2003) (unreported). Green does not contend that Fidelity engaged in fraud in the inducement and therefore summary judgment was appropriate.

**C. Defamation**

Green argues that Fidelity defamed him through both statements made on the Form U5 it submitted to NASD following his termination and statements made by his supervisor within the company. The district court addressed only the first claim. Upon firing Green, Fidelity was obligated to submit a Form U5 explaining the reason for his termination. The reason given was that Green "violated department procedures by recording leads to business partners when he did not have the requisite substantive conversations with the customers." R. 24, Ex. 2 at 1-2. Green does not

7

contest the accuracy of this statement but rather contends that it implies a dishonest motive. However, the statement makes no mention of any alleged motive and is substantively true. Ohio Revised Code § 2739.02 provides that truth "shall be a complete defense" to an action for defamation. *Accord Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074,1083-84 (Ohio 1996).

With regard to the statements made by Rulli, Green objects to an email she sent to Svitkovitch and Fortune, stating that Green had been "inappropriately submitting leads, therefore obtaining credit for work not performed," and that his actions were a "manipulation of systems to receive credit for work not performed."

These statements are protected by qualified privilege. *See Gaumont v. Emery Air Freight Corp.*, 572 N.E.2d 747, 755 (Ohio App. 1989) ("It is well established in Ohio that communications between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege."). As such, they "are not actionable absent a showing of actual malice." *Matikas v. Univ. of Dayton*, 788 N.E.2d 1108, 1115 (Ohio App. 2003) (citation omitted). To demonstrate actual malice, Green would need to show that Rulli made the statements "with knowledge that [they] were false or with reckless disregard of whether they were false or not." *Daubenmire v. Sommers*, 805 N.E.2d 571, 587 (Ohio App. 2004) (citations omitted).

Green points to no evidence from which a rational trier of fact could find actual malice. Rather, Green concedes that he violated company policy, admitted as much to Rulli, and that the reporting violation improperly gave Green credit for the lead. To survive summary judgment, Green is required to do more than simply assert that the statements were made with malice. *Arendale v.*

*City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations.").

**D. Interference with Prospective Employment**

Green's final claim is that the statements on the Form U5 interfered with his prospective employment. The Ohio Supreme Court has held that tortious interference with business relationships occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995). Again, Green points to no probative evidence beyond his assertions that no one would hire him because of the statements made on the Form U5. "A plaintiff's conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment." *Johnson v. Interstate Brands Corp.*, No. 08-6387, 2009 WL 3583397, at *5 (6th Cir. Nov. 3, 2009) (unpublished) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (1992)).

**III.**

Having found no error, we **AFFIRM**.